May it please the court, the question really, there's only one question in this case, is whether or not there's a duty to defend when the pleadings only seek damages that occurred outside the policy period. There are some undisputed facts. One is we know that the Mid-Continent policy was cancelled June 6th of 2014. That is undisputed. Two, we know according to the current pleading that there was a fire that occurred on December 1st of 2016, some two and a half years after the Mid-Continent policy was cancelled. And three, we know that the underlying suit, the underlying pleading or the controlling pleading is the second amended petition which says that the injuries and damages suffered by plaintiffs and made the basis of this action arose out of an occurrence on or about December 1st, 2016. I've read through the pleadings. There are no other dates alleged in the second amended petition. But you stopped before the period of the sentence in the underlying complaint, right? So after you said it's completely right, arose out of an occurrence, this is the active pleading, right? Correct. Arose out of an occurrence on or about December 1st, 2016 at the property in question. Right. That relates back to construction and or installation of siding occurring before the date of loss. So it's in the… It is. And basically what they're saying is this fire that occurred on December 1st relates back to the construction that was done earlier. Otherwise they'd have nothing to sue the defendant. It happens in every construction defect case. No case that wouldn't have that. The construction's completed at one time and at some point in time in the future you have a fire, you have a defect, you have something, but it all relates back to the original construction that was done earlier. And so that's, as Judge Haynes has pointed out, that's true in all of them. Now, the policy that was issued by METCON is a standard GL policy. And I know, Judge Haynes, you're very familiar with it. Basically what it requires is you have a suit seeking property damage that's covered by the policy in order to have a duty to defend. And we also know… Maybe in explaining that you should explain the difference between a comprehensive general liability policy and a homeowner's warranty insurance policy. Well, typically the homeowner's warranties policies are first party. No, I'm talking about when, you know, they used to back in the old days maybe… You mean talking about the comprehensive general liability policy? No, no, I'm talking about the old days when they actually insured those homeowner's warranties. You don't remember the old days? I remember the old days. Now, some of that memory is fading now. Okay. Forty-three years. That's a painful memory. Yeah. But they had actual insurance policies insuring the homeowner's warranty or the builder's warranty. Warranty. That would be different. That would cover this. That would be different if it's from his work. Correct. But here we know that this is an occurrence policy. That is the occurrence, the bodily injury property damage must occur during the policy period. And we know before this fire occurred, the policy had expired or been canceled for two and a half years. And we know, as the court has pointed out, that in order for there to be a duty to defend, there must be allegations seeking property damage. I'm only about bodily injury because it's not involved here. Seeking property damage covered by the policy. And the only property damage that's covered by the policy is property damage that occurs during the policy period. Let me ask you this. What if instead of this fire happening in December of 2016, let's say in November of 2016 the property owner decided to sell the building and some inspector came in and found a nail in an electric wire and they turned and sued the builder. Tell me how that would have progressed. What would that look like? And they turned, they nailed. Well, then I think we get into the J5, J6. And, you know, I know, Judge Haynes, you wrote Gore and you were on the panel in JHP. But generally, I think it's J6. If this is part of the work, and again, the allegations in the petition are they did this construction and the installation of the siding. Paragraphs 12, paragraphs 15, paragraphs 20, that they did that. If this occurred during the construction and this is their work, then there would be no coverage under J5 or J6. That's what this court said in VRV. In VRV, we had the policy when it was built, then the policy canceled, and then the wall collapsed. And that's the contrast between general liability versus insuring a builder's warranty. Because insuring a builder's warranty would have covered something that should be warranted, like how I put, you know, the nails into the wire. But general liability is a different animal. It is a different animal. From what you were saying before. Correct. What do you do with the language that says, like in the loss of use clause that says, all loss of use shall be deemed to have occurred at the time of the physical injury that caused it? Isn't the nail in the wire the physical injury that caused the fire? Speaking of physical injuries, I was going to ask what happened to you with your left arm, but I will defer that. But this is the same thing they argued, Judge, in VRV, this court. They were arguing, well, this crack started developing during the policy period. And it gradually got bigger and bigger and undermined the wall until eventually, after the policy period, it fell. And they were trying to say, kind of what you're arguing here is, well, under the definition of property damage, we sort of go back to the original crack. And this court said that you were not allowed to do that. They said property damage does not necessarily occur at the first link in the causal chain of events giving rise to the property damage. The focus must be on the time of the actual physical damage to the property and not the time of the negligent conduct or process that later results in the damage. But isn't the physical damage to the property the nail through the wire? It could be argued, but then it's going to be excluded, as I said, by J5, J6. No, no, the damage to the wire would be excluded, but not the resulting loss. Correct. But if they're saying somehow that the piercing of the wire back whenever the property, whenever it was built, and there's nothing in the pleadings that say that, there are no dates there about when the property was built. But if that was, then we know that it was during the construction process, it was ongoing operations, and it would be subject to J5, J6, which is what this court held in the VRV case. They said, look, even if the crack could be property damage, it's going to be excluded. And so, therefore, you can't use that crack in the wall to give rise to a duty to defend. I want to try to understand your conception of the property. So the house is property, right? The whole house, this was, according to the pleadings and some of the interrogatories, there was a room addition to the property. So some component of the house is property. The siding is property? Siding is property. Wiring is property. I mean, clearly. But the question is, is it? So the wiring is property. Clearly the wiring is property. And there's damage to the property because the nail goes through the wire. Well, two things. One is you have J6, which would exclude property damage to the insured's work while the insured is conducting the work. But number two is they must seek, there must be a lawsuit seeking that property damage. And they have not sought Liberty Insurance, the subrogation carrier for Mr. Hamilton, has not sought that damages. There was a case called the damage to the wire. If you go back to the feed store case, I'm sure Judge Haines probably remembers that case. It's an old case from the 1980s. It was a case involving injunction. But there was also other damages that could have been alleged that weren't. And this was the Houston Court of Appeals. They said, look, on the duty to defend, what governs not is what could have been sought, but what is actually sought. There was later another case, Clemens v. State Farm, where they said, again, we're going to look at what actually is sought, not what could have been sought. The only thing sought in this case. So, actually, this is a case where there could be indemnity but not a duty to defend. Well, clearly we know that the indemnity. For the wire, for example. Well, the cost of whatever. But we know that the house fire is not going to be covered because it's two years after the policy period. But if you look at the allegations, again, it just says we're seeking the injuries and damages suffered by the plaintiffs and made the basis of this action arose out of an occurrence on or about December 1, 2016. There's nothing about we're seeking damages for the piercing of a wire sometime before that. They're saying their damages were on December 1, 2016. I read it to say exactly the first thing you said. The property in question, this is, again, the complaint, had a fire caused by construction and or installation of siding by defendants when defendants improperly hammered nails through electrical wiring. And so that's the thing that distinguishes it from the Peer case or the Concrete Foundation case. I mean, if I put down the Concrete Foundation and it looks fine, I'm looking at the property. I'm looking at the Concrete Foundation. There are no cracks in it, right? It's completely fine. And then years later, shifting, you know, in Texas in particular, we have all kinds of foundation issues. And the cracks arise after the policy period. It makes total sense, right? The cracks, the property damage, the damage to the foundation and resulting to the house, that all comes later. But if the actual damage, if the thing that is the thing that causes all of the stuff that the insured is seeking happens during the policy period, I don't see how that's not covered by the policy. We're talking about first duty to defend right now as opposed to duty to indemnify. The question is, are they seeking damages that are covered by the policy? And it seems like there's two different ways to think about it. There's the fire, and then there's the thing that causes the fire by allegation and the hammer. Correct. So they're both. I understand why your client wants to distinguish the two of them. But it's not either or. It's both of them together is the source of the loss. Well, but this court in VRV, if you look there, they said, you know, we're not going to look at the negligent act or what eventually caused the wall to collapse. We're going to look, that's not the property damage. It's when the wall collapses. What about the Supreme Court in Don Building Supply where they say the policy asks when damage happened, not when it manifests? Yeah. I mean, there was a big question among. Did the damage happen when the nail went through the wire, not when it manifested by the fire? Well, again, it may have, but they haven't sought damages for that. That's my, that's where I'm focused on, is was it, was it, would they have ever sued for this hammering of the wire without the fire? Probably not, not just as in VRV. They probably never would have sued for the cracks. We know the cracks were in there for several years in the walls, and there was no suit by the homeowners for those cracks. The suit wasn't brought in VRV until the wall fell. Help me here, because I'm not understanding your answer. You keep saying they're not suing for that, and I, tell me what that is. For the piercing of the wire. Well, they're suing for the damage caused by the piercing for the wire. Which damage occurred on December 1st of 2016, two and a half years after the policy was canceled. Well, what about the language again that I asked you about earlier that says we're going to deem it to happen when the damage occurs? It says if there is property damage and a continuation. Where does it say that? That's in the definition of property damage, I believe. 17, a physical injury to tangible property including all resulting loss in use of that property. All such loss shall be deemed to have occurred at the time the physical injury that caused it. And that's the language I'm concerned about. Okay. And again, I would refer the court back to the VRV case where they say that is not the property damage. I mean, Judge Benavides was very, very clear on that. Here also there are allegations in the pleadings that the property damage occurred on December 1st. This court, I think it was in Gore, maybe JHP, one of them, has said we're not going to allow the party through extrinsic evidence to contradict express pleadings. We know that happened in the Fielder Road v. Guide 1 case where they allege the damages occurred on one date when everybody knew they occurred in a separate date. And the Supreme Court there, and this court has followed that, said where there is an express allegation of the date of injury, we're not going to let the parties contradict it by extrinsic evidence. I mean, the problem as I see it is I understand the argument about the damage from the nail, but I also understand that it would have been a really easy case in Don's building to just say when the construction happens, that's the date. And that isn't what they said. So then I — Well, then going back to what we started off with, why wouldn't in every construction defect case? Obviously, if you have a construction defect, you have it because something went wrong in the construction. So in every construction defect, Judge Hayman, why wouldn't you say it's always the insurance company that's on the hook, is the one that was there when the house was built, the apartment complex was built, because all of this that happens later on was resulting from the bad work that occurred ten years earlier or five years earlier. And that's — I'm sorry. It's not the way it's done. Okay. You've saved time for rebuttal. I do. More thought to this nail. Thanks, Judge. May it please the Court, Counsel, this is not a construction defect case. A construction defect case is a case where somebody intentionally put something into the house that was bad. The VHR or VRV case was one where the wall was defectively designed, but the builder put it in the way that it was designed. He didn't accidentally put the wall in wrong. He put the wrong kind of wall in, and then the cracks happened, and that was the property damage. In looking at this case, what MidContinent wants this Court to do is, again, blur the lines between an occurrence policy and a claims-made policy. This particular policy defines it as physical injury to tangible property, including all resulting loss of the property. All loss should have been deemed to have occurred at the time of the physical injury. The physical injury, no doubt, was the nail through the wire, as alleged in the pleadings. There's not been any trial of that issue to determine whether or not it actually is truthful, but we don't look at that at the context of the duty to defend. The four corners of the pleading, the four corners of the policy. This particular pleading that we've talked about already does allege damages to the property. It alleges damage to all the property. It says the property in question had a fire, has a date, that relates back to the construction problem of putting the wire through. Even in your wrong design or whatever, if they're going to sue the builder, they're going to say it relates back to his construction because he put up the wall wrong or he put up a wall wrongly designed or whatever you want to say. There's no construction case that's going to say Mr. Gonzales showed up six years later and lit a fire to our house. I mean, those cases aren't going to be insured anyway. So it's always going to relate back to the construction, and that doesn't answer the question, right? Well, it does answer the question because it has to, under the policy, be an accident. The policy defines the occurrence as an accident. If I go and I put in a wall that's the wrong wall, the wrong specs, but I do it exactly how I wanted to do it, I didn't have an accident. I put the wrong product in. That's a defect. That's not an accident or a negligence type claim, which the policy is intended to cover. In this particular case, the accident was the allegation that a nail went through a wire. That was not intended. That was not a design. That was not the way it was supposed to be installed, where you can go back and use these exclusions to say your work product was what you designed and what you did, and it was defective. This was a negligent act and not an intentional one. Well, we wouldn't need the exclusion if what you said is right, if what you said is it would never be an accident to wrongly design. Then we wouldn't need the exclusion for wrongful design. So I'm still trying to understand. I think this is a difficult area, and I'm wondering would it be beneficial to certify this? Because this kind of takes Don's Building to another floor, and I wonder if given that we're still ‑‑ I mean, the idea of Don's Building was, you know, we had had the manifestation and we had had the this and we had had the that, and maybe it's the longshore policy and maybe it's this and maybe ‑‑ you know, we've been arguing about this for ‑‑ I mean, I've been to dozens of CLEs about this in my life, and then Don's Building was an effort to answer that, and here we are, we're still arguing about it. So I'm wondering if further elucidation from the Texas Supreme Court would be of value. I'm not sure what we would ask them that's different than what they've already been asked, because in this case we have property damage that occurred during the policy period. In Don's Building, they had property damage that occurred. We have a lawsuit that's not really on that. It's on the fire, which had there never been a fire, there never would have been a suit. So it's not this cracking, it's not the wrong wall, it's something ‑‑ because you could, I don't know, you could have put the nail somewhere it didn't belong and no one would ‑‑ and it wouldn't be a commercial general liability problem. It would be, I don't like this nail sticking out in my beautiful sitting room where I'm supposed to be hosting my colleagues. That isn't going to be the same analysis. So, I mean, you could always say putting a nail in the wrong place is a problem and whatever, whatever, we can always characterize these things, but I feel like there's still, I'm still struggling between, these are two really good arguments, and I'm struggling between where exactly the Texas Supreme Court wanted to put us. So the court in that case was dealing with siding that was defective. So the siding itself was the defect, but the damage was that the water was infiltrating the siding into the wall of the house and causing rot and problems. So we have the same fact pattern. We have a nail that was not defective that was alleged to have been hammered into the wall and pierced a wire. That caused damage to the property immediately. It may not have caused complete 100% damage, but it did cause the damage at the time. The manifestation was the fire two years later, but that damage occurred, and I disagree that this lawsuit doesn't sue for that damage because it specifically says to which to be the court should liberally construe. It relates back to the installation of the property, and one of the allegations was negligence and failure to perform safe construction and or installation on the property in question. And in the damage paragraph it says that the plaintiffs are seeking damages for resulting from the acts or missions for which recovery was sought, which was that negligence in the construction. And it also says plaintiffs seeks recovery for actual damages to property contained within the property in question, including but not limited to personal effects and or temporary housing cost. So they have made the allegation that there are damages to property within the property. We can't speculate now that they didn't mean the wire or that they didn't mean the wall in between or the space in between. We're looking at a liberally construed pleading that seeks damages for property within the property. We've got an occurrence. We've got an accident for purposes of the duty to defend, which is really the issue in this appeal. The pleading covers it. The policy covers it. They have this duty to defend. I really think when you look at these exceptions that have been alleged under J-5 and J-6, they're more of an indemnity question because they're going to determine potentially things that could be carved out if indemnity and liability is found. So do we carve out what actual work was performed? It doesn't say that in the pleading anywhere that my client put the wiring in, which not part of the record, but the facts are that he didn't do that. It was a remodel addition. He nailed the siding up, pierced a wire that the homeowner had put into the house. But that's property within the property. Is your position that the J-6 exclusion, when it says your work was incorrectly performed on it, that the it in the sentence of J-6 is the siding? I think that the it in J-6 would be the contractor's work, whatever it might be. It might be the siding. It might be the nail itself hammering the siding in. But it's not the wiring because that wasn't part of the work. And neither was maybe the insulation between the walls or some other things. Wow, that's awfully tight, tight definition of J-6. I'm not sure we get to J-6 because to me my focus is on really, I guess your best argument really is when in doubt, defend. True, and the facts are yet to come to light in this case because we haven't litigated the underlying case. That plaintiff has been patient enough to abate the suit while this appeal. That plaintiff wants the insurance money. That's right. That's right. There's always that. I'm not the first plaintiff to feel that way. Okay. But really I think where we're at today is we're asking the court by this appeal to really. . . I'm sorry, one more thing on the Texas Supreme Court. The harm then in your view of certifying it is the delay. Additional delay, and I think we're asking them the exact same question again. I think if we ask them to now get down into the details of the facts of every case to tell us what property damage is, is really what they refuse to do in the Dons Building case. They say that that's a factually intensive scenario that needs to be decided on a case-by-case basis. So I don't know that we're accomplishing anything new by asking the court to tell us, okay, under the facts of this case, the nail pierces the wire, was that actual damage? Because it was damage to the property. I don't think anybody can contest that it harmed the property. It didn't make it any better by putting a nail through a wire that ultimately shorted out and caused a fire. So we would be asking the court to drill down on the facts. I'm not talking about where you build a design, that the design's wrong, but you built it per that design. But you just used poor quality concrete. Isn't that harming the building? It's not an accident if you picked that and chose it and intentionally used it. Well, maybe I went to the store and I picked up number 30 and thought it was number 3 and used that concrete, and that was the problem. That was an accident. I thought I was picking up the right concrete. I picked up the wrong concrete, put it up, and it's not the right concrete, and that ultimately causes all of the house to collapse. And I think that's more like the VRV case where they put the wall in, and the wall was bad, but they put it in the exact way they intended to put it in. They did their work. They were not negligent in performing their work. They were negligent in designing the wall wrong. In my hypo, I'm the builder. I'm negligent in picking up the wrong bucket of concrete. I think I'm picking up the right one. I think it says 3 when it says 30. Okay, we'll just say that. And that's a mess for this kind of house, let's just say. And ultimately the whole house collapses down the road, and there's a suit similar to this. So where was the property damage? So I don't know in that case that you have property damage because your contractor put in the wrong product. That's like putting in a defective retaining wall. You put the wrong product in there, but you did it right. You didn't accidentally mix it wrong, put the wrong chemical compound into it. You purchased a product and you put it in. But you did that. Then what would be the situation there? The scenario would be where does the accident occur? Because the policy definition of occurrence is an accident. But, you know, under that theory, you wouldn't have needed this 20 years of manifestation and all that stuff because you can't insure something that's not an accident. I can't insure you for committing murder down the road. That's against public policy, among other things. So it's always insuring accidents. I mean, that's what insurance policies do. Right. So why did we have the 20 years of CLEs, and probably more just when I started going to them, about this that Don's building was trying to answer if it's just was it a defect in design versus an accident in negligently putting constructing or whatever you want to call it? So the manifestation issue that I think was around was the scenario where nobody ever knew that there was property damage. They never found it. They never discovered it. And years and years go by. And then the struggle is you have a claim that potentially occurred during a policy. You have a strong insurance lobby at the legislature saying that we want these policies to say what they mean and mean what they say so that there's not undisclosed risk out there for both parties to the insurance contract. And when the injury itself is not manifesting for years, I believe courts were trying to figure out a way to help the insured without crossing that line of trying to rewrite the policy itself because the insurance policy becomes superfluous if you don't have any coverage just because you can't discover it until years down the road. And I believe that's what Don's building supply was trying to do is make more of a bright line so that there aren't questions about whether it is or isn't a damage to the property. And they're saying that the actual physical injury is what has to occur during that policy period. Even if that actual physical injury would be exempted under J5 or 6? I can't remember which one. Because if they did file my November 2016 lawsuit, that's an easy one. I don't think it makes it to the Fifth Circuit. No, so the actual physical injury can't be to your own work. I mean, I think that exclusion does specifically say you can't harm your own work and basically insure your work product. That's not what the policy is trying to cover. So in this case, why it's different is because we harmed something else in the property. But it was in the cubby you were in. I think Gore kind of speaks to the cubby, not to just I'm supposed to be building a wall. But if the wall has wiring in it, that's part of that group. That's different from so if I'm working on the wing of a plane and then I cause the engine over here to blow up, that would be different. But you're really parsing the siding if you're saying. Doesn't the J5 language say that particular part of the real property? I mean, isn't that the whole area that you're working? But you're working an area that has wires in it. Otherwise, there would never be a nail in the wire if the wire was over. They didn't go marching over to some other part of the house and put a nail in a wire. It's part of that particular part you're working on. You know, I guess it depends on how far down you drill. I mean, is it an inch away? Is it 5 feet away? Is it 10 feet away? I mean, the distinction has to be made, and I don't know that it can be said that it's just close enough that it has to be part of the whole when it is a separate and distinct part. I mean, to me there's no question, and this is just me. I obviously can't speak for my colleagues, but if they had put the nail in the wire, left, and that afternoon the house went down in flames, that that particular part isn't the whole house. That, to me, is very clear. The part that I have trouble with, I didn't really understand you to be saying the wire wasn't part of that particular part, and I'm sorry for misunderstanding your briefing on that. That seems to me to just completely make the J exceptions meaningless because the idea is I'm working here in this cubby, and what I'm working on here in this cubby is excluded, and the wire was in that cubby. If my client had been hired to wire it and build it, I think that would be correct, but I don't know that that's the allegation. The allegation is the siding was installed improperly. They said, By construction and or installation of siding by defendants when defendants improperly hammered nails through electrical wiring. So they said the defendants were installing the siding. They didn't say the defendants were eating lunch over here and threw a cigarette into this corner, and that somehow caused the problem. Right. Unfortunately, these policies are strictly construed against the insurer, and they write the policies. They could write it to say that it's broader, but right now it's that particular part, and that particular part is the siding, not the wiring. What case is that? That's the actual policy itself that says it's No, but in what case construes it the way you're construing it? Because the siding included the wiring. I mean, the wiring was in the siding. So the wiring was in the wall. The siding was on outside of the house. They nail it up. They don't even look at the wire. They don't even know that the wire is there because they can't see through the OSB board or whatever is outside. And I guess the question is, how far removed do you have to be to be away from that particular part? And I think with the policy being strictly construed and essentially this being a duty to defend at this point, that that duty to defend was triggered because the allegations of the lawsuit specifically say the siding. They don't talk about our client having the obligation to do the wiring and making it part of that exception. The wiring wasn't done defectively. You're working on the siding, and while you're working on that particular part, you nail into the wire. But I think that the allegation could be made the wiring was defectively installed because it was too close to the outside such that a nail could penetrate it. It shouldn't have been. It should have potentially maybe been in conduit or something to prevent that from happening. So there could be other negligence claims out there that are more developed as the case is litigated. But the exclusion is tied to your work, which is a defined term in quotation marks, and then your work is defined to mean work or operations performed by you or on your behalf and materials, parts, or equipment furnished in connection with such work or operations. But there's no allegation that the wiring is a material, part, or equipment furnished in support of installation of the siding, is there? No, there isn't. I can understand why your work would include the siding and the nail, but it couldn't include the two-by-fours or the drywall. Maybe it does. I don't know how you install siding. But it certainly wouldn't call the wires behind the wall. And I think that is the distinction because your job is defined by the policy, and the facts will have to essentially be developed on that. What exactly was he hired to do and how was he hired to do it? Because right now the complaint that we're bound by looking at states that it was just the siding. It doesn't state that he was required to do any of these other things that ultimately might be part of that exception, which is, I think, where I started this, and those exceptions may fall more so into the indemnity category of what might be pulled back from this than whether they have a duty to defend the allegations asserted by this particular complaint as written in the four corners of the policy. I mean, this list of things they did wrong is sort of broader than just the siding. The negligence list? Yeah. Yeah, there were 19 specific claims that all being liberally construed might trigger the duty to defend anyway. But also might make this particular part awfully big. Could. But does duty to defend trigger any one of those lists? Like, if there's a duty to say there's 19 acts of negligence and there's a duty to defend on one and then everything else is excluded somehow by hypothesis, you still have a duty to defend the entire suit? Is that how it works? That is correct. In fact, Judge Cummings said in his opinion here no matter how small the allegation is that's a covered allegation, it does trigger the duty to defend, and we believe that that's a correct assertion of the law. Okay. Thank you. Thank you. Appreciate it. Very quickly, I'm going to jump around. Judge Oldham, it's not the allegations of negligence that trigger the duty to defend. It's the property damage during the policy period that triggers the duty to defend. I think I inarticulate. Whenever the negligence occurs is really irrelevant. But if there's 19 accidents. Well, right. That's not an issue about negligence. Also, if you look as far as the scope of the work, again, on paragraphs 12, 15, and 20, they talk about construction as well as the installation of the siding. The interrogatory answers says they were hired, it's in the record, were hired to construct a room, to construct a room, more than just put siding up there, which would include, Judge, we believe, the wires. They've said, well, in the VRV, it was just designed. I've got the VRV opinion right here. This circuit said each of the Hoganian plaintiffs alleged that VRV or its subcontractors negligently designed and built the retaining walls during the policy period. So it's just not a design case. It's a construction case. What is wrong with the when in doubt defend analysis? Well, I mean, one of the things is you, Your Honor, in the Gore case, to sort of throw back your own language to you, said... I hate it when they do that. It's done to me all the time. The Texas Supreme Court quoted it. ...said that we're not going to imagine scenarios that potentially could give rise to a duty to defend. We're not going to do that. No, but I did say, the court said, when in doubt defend. Okay, but... That is the law. That is the law, but it's got to be... And I've been on both sides of that issue as a lawyer, and I've adjudicated a lot of cases on that as a judge, so I get it. But I dare say there's probably never been a case where you could not imagine or create or hypothecate some situation where there could be a covered claim. Even though they hadn't made it, somehow you could imagine that, and the court said, we're not going there. The Supreme Court did. Now... No, but I think the focus here, if I have to sum up, is this, um, the 26th... the allegation in paragraph 12. Okay. I kind of think you win or lose on paragraph 12. That's just me, and again, I'm not... Number one, I think it says, this is the property damage they're suing for occurred in 2016. This is a segregation case. Liberty Insurance. They say that earlier here. And so the damages they are suing for are only the damages from the fire that occurred on December 1st of 2016. Now, it may have been caused by actions earlier, but that's irrelevant. Now, one of the things counsel kept talking about was eight-quarters rule. And I would just point out for the court... He talked about certification. Yesterday, the Supreme Court heard the State Farm case that was certified by the Fifth Circuit Judge Willett to the Texas Supreme Court on the issue of extrinsic evidence. Are we going to have it? If we are going to have it, what are we going to have? And so that was argued yesterday in the Texas Supreme Court. Because they're trying to rely on extrinsic evidence here. Because if you look... And again, you know, one of the things they're saying is, well, the piercing, the piercing of the wire. Where in the pleading does it give a date that the wire piercing occurred? There's nothing that says the wire piercing occurred during the Mid-Continent Policy. And we know that this fire that occurred occurred two-and-a-half years after the cancellation of the Mid-Continent Policy. Is there any dispute that Mr Gonzales did... anything after the expiration of the policy period? Uh, I don't know. I know, apparently, after the policy was canceled, it did not expire, apparently he did not see fit to buy any more insurance. But he was not on the property... I don't know if he was... But you're saying we can't look at that because of the Eight Corners Rule. Eight Corners Rule... It'll be living on the property. There is no allegation about when the piercing of the wire... Well, the fact is, we do have a specific allegation of December 1st, and you go back to Guide 1 v. Fielder O'Bannon's church, says that where there are allegations, specific allegations, we're not going to use extrinsic evidence, which they're trying to use, to contradict it. Same thing, Judge Pineoaks v. Great American, where there was an allegation. It wasn't the date of injury, but they said, if you have an allegation... This was who did the work in Pineoaks. They said, we're not going to allow extrinsic evidence to contradict that. And I think that's what they're trying to do. Okay. You know, in my old days on the State Court, we would have spent the whole afternoon on this, so I appreciate both of y'all. These are the kinds of arguments I particularly enjoyed in those days, but we have our limits here, and we appreciate your argument. Can I ask one question for the Court? Mr. Hayden, what did you do to your... I tore a tendon in my finger walking a dog. Saving a dog. So it was... I don't think it was that heroic. Okay. All right. That concludes our oral argument. We want to again thank Judge Hayden for serving alongside us, and we want to thank you for your arguments. The case is under submission. The panel adjourns, and we will resume under the regular order in the future.